IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ALBERT BURGESS BROWN, JR. | ) | |
| | ) | |
| Plaintiff, | ) | 8:13CV80 |
| | ) | |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | MEMORANDUM OPINION |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the motion of the plaintiff, Albert Brown ("Brown"), to reopen his First Application because of Due Process and similar fault violations. Brown also appeals a final decision by the Commissioner of the Social Security Administration ("SSA") denying Brown's application for disability benefits. After review of the parties' respective positions, the Court makes the following findings. The Second Application decision of the Administrative Law Judge ("ALJ") is supported by the substantial evidence on the record and the Court will dismiss the remainder of the claim.

There are two applications for Disability Insurance Benefits in this case: (1) an application dated October 5, 2006 ("First Application"), and (2) an application dated August 17, 2009 ("Second Application"). The Court will first address the

merits of Brown's First Application claims.  The Court will then proceed to address the merits of the Second Application claims.

## I. REVIEW OF FIRST APPLICATION

### BACKGROUND

Brown was a forty-one-year-old man at the beginning of the First Application (*Brown v. Astrue* ("*Brown I*"), 4:08CV483, 2009 WL 88049, at *2 (E.D. Mo. Jan. 12, 2009)).  He possessed a high school diploma and worked in computer installation, computer maintenance, and system analysis (*Id.*).  While on those jobs, Brown lifted weights ranging from 25-100 pounds (*Id.*).  Brown left his last job in December 2004 in preparation for another job that never came to fruition (*Id.*).  Brown collected unemployment benefits from December 2004[1] until August 2005 (*Id.*).  Concurrent with the end of his unemployment benefits, Brown experienced a fall which injured his back (*Id.*).  Brown received no medical treatment or medication for this or any other of his ailments, though he once visited a clinic but determined that the line was too long and left without undergoing an examination (*Id.*).

On October 5, 2006, Brown filed his First Application claiming disability based upon his back injury, obesity, high

---

[1] Therefore, the final date which Brown could be eligible for Title II benefits was December 31, 2009, his date last insured ("DLI").  *See* 42 U.S.C. § 423(c)(1); Tr. 15.

blood pressure, and sleep apnea (*Id.* at *1-2). SSA provided Brown with a consultive medical evaluation with Dr. Elbert Cason on November 16, 2006 (*Id.* at 3). Dr. Cason provided a thorough medical analysis of Brown and diagnosed Brown with low back pain with radiation down the right posterior thigh; unregulated high blood pressure; sleep apnea caused by morbid obesity; and morbid obesity (*Id.*). The ALJ in the First Application scheduled Brown for additional medical examination on February 18, 2008, but Brown informed the ALJ that he would not participate in further medical examinations (*Id.* at 4).

Initially, SSA denied the First Application on December 8, 2006[2] (*Id.* at *1). The ALJ denied Brown's First Application on February 20, 2008. The Appeals Council, the District Court for Eastern District of Missouri, and the Eighth Circuit upheld the ALJ's decision (*Brown v. Astrue* ("*Brown II*"), 09-1355, 2009 WL 4825179 (8th Cir. 2009)).

Brown asserts one factual error in his First Application claim; he claims the signature of J.M. Boone ("Boone") on a residual functional capacity ("RFC") assessment

---

[2] Because Brown filed the Second Application on August 17, 2009, over two years after this "Initial Determination," SSA could not reopen the First Application under 20 C.F.R. § 416.1488(a) or (b). *See* 20 C.F.R. § 416.1488(a), (b). SSA could reopen that case under subsection c.

form misled the ALJ into granting a higher deference to Boone's lay opinion.  Boone signed the RFC assessment which she completed December 7, 2008.  Boone signed her name in a signature box with the typeface "Medical Consultant's Signature."  However, Boone is not a Medical Consultant as defined under 20 C.F.R. § 404.1616(b) and the SSA does not refute that fact in any of its briefs.  Brown cites *Dewey v. Astrue*, for the proposition that the First Application's proceedings were harmful error based upon a non-Consultant signing the Medical Consultant's signature box.

In the case before this Court, Brown contends that the greater deference the ALJ purportedly awarded Boone's opinion violated his Due Process rights and constituted reversible error.  SSA contends that the Court cannot review the First Application because of the doctrine of res judicata.  The Court has reviewed the arguments and determines Brown's claims are unfounded and the ALJ's error, if any, was harmless.

### LAW & ANALYSIS

#### 1.   RES JUDICATA

"Res judicata bars subsequent applications for SSDI and SSI based on the same facts and issues the Commissioner previously found to be insufficient to prove the claimant was disabled."  *Hillier v. SSA*, 468 F.3d 359, 364-65 (8th Cir. 2007) (citations omitted).  If res judicata applies, "the medical

evidence from the initial proceeding cannot be subsequently reevaluated." *Hillier*, 468 F.3d at 365.  An ALJ may refuse to consider any issue pursuant to the doctrine of res judicata.  20 C.F.R. § 404.957(1).

The Commissioner may waive the res judicata defense by reopening the claimant's previous application.  *See Hillier*, 468 F.3d at 364 n.2 (citations omitted).  A second application may constitute a reopening.  *See Roesch v. Apfel*, 17 F. Supp. 2d 1080, 1087 (D. Neb. 1998) (citation omitted).

Here, the ALJ refused to reopen Brown's First Application when the ALJ stated that the previous decision was the "ultimately final and binding decision of the Commissioner." Tr. 15.  Generally, "federal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977)). However, "[f]ederal courts may review the Commissioner's decision [not to reopen a case] in two circumstances: where the Commissioner has constructively reopened the case, and where the claimant has been denied due process."  *Id.* at 180.

## 2.   CONSTRUCTIVE REOPENING

The Court must evaluate the actions of the Second Application's ALJ to ascertain whether that ALJ constructively

reopened the First Application. Brown contends that the Second Application's ALJ used evidence from the First Application and therefore "opened the door" for the Court to reconsider his First Application. Filing No. 32, at 3. Brown's claim is baseless.

"If the Commissioner 'reviews the entire record and renders a decision on the merits, the earlier decision will be deemed to have been reopened, and any claim of administrative res judicata to have been waived' and thus, 'the claim is . . . subject to judicial review.'" *Byam*, 336 F.3d at 180. However, "[t]he ALJ's use of evidence presented with a prior application in order to determine the claimant's medical history does not amount to a reopening of the first application." *Howard v. Apfel*, 17 F. Supp. 2d 955, 966 (W.D. Mo. 1998) (citations omitted); *see Hillier*, 486 F.3d at 364 n.2 (citations and quotation omitted).

The ALJ in the Second Application reviewed limited medical evidence from the First Application and then expressly refused to adjudicate the First Application anew. Tr. 15. The ALJ did not review the entire record of the First Application. Therefore, the Commissioner did not waive its defense of res judicata through constructively reopening the First Application.

### 3. DUE PROCESS

Brown also contends Boone's assessment form violated his Due Process rights. Brown cites *Dewey v. Astrue*, for the proposition that the signature of a non-consultant in a Consultant's signature box materially misled the ALJ. Filing No. 1, at 4-5. First, Brown's contentions fail because *Dewey* is distinguishable from the case at hand. Second, even if the ALJ erred, it was a harmless error.

*Dewey* is distinguishable from the present case because the ALJ did not grant greater deference to lay opinion over a contrary expert opinion. *See Snyder v. Astrue*, No. 11-063, 2012 WL 4425335, at *18-19 (W.D. Mo. Sept. 25, 2012). In *Dewey*, an ALJ mistakenly believed that a lay opinion was an expert opinion. *Dewey v. Astrue*, 509 F.3d 447, 449-50 (8th Cir. 2007). The ALJ favored the lay opinion of a non-consultant's RFC assessment over the conflicting expert opinion of the claimant's treating physician. *Dewey*, 509 F.3d at 449-50.

In the First Application, Brown presented no evidence from a treating physician because he received no medical treatment or medication for any of his ailments. *Brown I*, 4:08cv483, 2009 WL 88049, at *2. Brown also refused further medical examination. *Id.* at 4. Therefore, *Dewey* is distinguishable because Brown had no treating physician and

-7-

therefore the ALJ did not weigh Boone's opinion over that of a treating physician. *See Snyder*, No. 11-063, 2012 WL 4425335, at *18-19).

Second, the ALJ's error, if any, was harmless. The Eighth Circuit recognizes the doctrine of harmless-error in Social Security cases. *See Byes v. Astrue*, 687 F.3d 913, 917-18 (8th Cir. 2012). In order to prove an error was not harmless, Brown must provide "some indication that the ALJ would have decided differently if the error had not occurred." *Id.* at 917 (citing *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008); *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003)). Specifically, this Court must decide whether "the ALJ inevitably would have reached the same result had he understood that the Residual Functional Capacity Assessment was completed by a lay person and not a physician."[3] *Jones v. Astrue*, 07-cv-698, 2008

---

[3] Brown proffers an additional argument: Although "[Program Operations Manual System ("POMS")] guidelines do not have legal force and do not bind the Commissioner, this Court has instructed that an ALJ should consider the POMS guidelines." Filing No. 36, at 7 (citing *Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir. 2003)). Brown's POMS states "[i]t must be clear to the appeal-level adjudicator when the SSA-4734-BK was completed by an SDM because SDM completed forms are not opinion evidence at the appeal levels." SSA ("POMS"), DI 24510.50, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510050 (April 13, 2012). However, this iteration of DI 24510.50 did not exist on February 20, 2008, at the time of the First Application's adjudication, and its predecessor was silent on clarifying whether an SDM completed the RFC assessment. *See* POMS DI

WL 1766964, at *9 (S.D. Ind. April 14, 2008), *Dewey v. Astrue*, 509 F.3d 447, 449-50 (8th Cir. 2007). The ALJ would have come to the same determination without Boone's assessment.

In the transcript of the First Application, the ALJ expressly referred to Boone as "adjudicator J.M. Boone." Tr. 33. The ALJ knew that Boone was not a Consultant. Furthermore, the ALJ's eleven-page opinion never cited or mentioned Exhibit 2F, Boone's assessment. Tr. 32-42. The ALJ did not rely upon the RFC assessment in the First Application at all. The ALJ in the First Application would have inevitably reached the same result because he understood that the RFC Assessment was completed by a lay person and not a physician. *See Dewey*, 509 F.3d at 449-50.

Even if the ALJ erred, it is harmless. On the face of the First Application's decision, the ALJ never cited Boone's assessment. In addition, Brown presented no conflicting expert opinion from a treating physician to outweigh Boone's lay opinion. The mere possibility of error is insufficient for Brown to prevail in his claim. Brown has not shown any indication that the ALJ would have decided differently if the error had not

---

24510.050 (effective April 2, 2003 - July 28, 2008) (stating under Medical Consultant Signature "[a]fter form completion, sign, enter your code, and date the SSA-4734-U8."). The ALJ sufficiently considered the then-existing POMS in the First Application.

occurred.  *See Byes,* 687 F.3d at 917-18.  Therefore, because the ALJ in the First Application did not cite Boone's assessment and expressly referred to Boone as an adjudicator, the ALJ would have inevitably reached the same result.  *See Dewey*, 509 F.3d at 449-50.

In conclusion, Brown's First Application is not reopened by either constructive reopening or violation of Due Process.  The ALJ in the First Application did not afford any weight to Boone's assessment, and if such an error had occurred, the error was harmless.  The SSA correctly relies upon the doctrine of res judicata to foreclose Brown's First Application complaints.[4]

## II. **REVIEW OF SECOND APPLICATION**

### BACKGROUND

On August 17, 2009, while Brown's First Application was still pending in the Eighth Circuit, Brown filed a Second Application for disability insurance benefits and again alleged disability beginning August 1, 2005 (Tr. 12).  Brown contended that he was disabled due to congestive heart failure, extreme fatigue and weakness, renal dysfunction, circulatory deficits in

---

[4] Brown also asserts a *Bivens* action against the SSA.  That claim will be dismissed.  *See Schweiker v. Chilicky*, 487 U.S. 412, 420-29 (1988).

his feet and legs, arthritis in both knees, obesity, low back pain, sleep apnea, and high cholesterol (Tr. 16).  The SSA denied this application on December 13, 2010 (Tr. 12).  On January 3, 2011, Brown filed for an ALJ hearing but later waived his right to the hearing in March 2012 (Tr. 109).

The ALJ issued an unfavorable opinion in which the ALJ made two determinations.  First, the ALJ would not review the merits of the First Application because the last SSA opinion for the First Application constituted the "ultimately final and binding decision of the Commissioner" (Tr. 15).  Second, the ALJ determinated her opinion was limited between February 9, 2008, until December 31, 2009.  According to the ALJ, February 9, 2008, was the day after the last SSA decision in the First Application and December 31, 2009, was Brown's DLI (Tr. 15).[5]  The ALJ incorporated the decision of the First Application's ALJ to the extent that it pertained to the period prior to February 9, 2008 (Tr. 18).

The ALJ then determined that, between February 2008 and December 2009, Brown was not disabled under the meaning of the

---

[5] The actual date of the final SSA decision for the First Application was February 20, 2008 (Filing Nos. 31, at 2; 43, at 2 n.2; *Brown I*, 4:08CV483, 2009 WL 88049, at *1).  The Second Application ALJ assessed Brown's claims under the earlier of the two dates, and therefore any error is in the plaintiff's favor.

Social Security Act (Tr. 23). The ALJ found Brown was severely impaired by morbid obesity, hypertension, and chronic lower back pain (Tr. 15). Brown adduced no evidence to support that he suffered from other ailments prior to his DLI (Tr. 16). The ALJ stated that Brown did not have an impairment or combination thereof that medically equaled the listings of 20 C.F.R. Part 404, Subpart P (*Id.*). The ALJ went on to make a credibility determination of Brown's allegations of the intensity, persistence, and limiting effects of his ailments (Tr. 17). Importantly, the ALJ noted that the record primarily constituted materials outside the time frame of Brown's Second Application (Tr. 19). Finally, the ALJ determined Brown's RFC to be a full range of light work (Tr. 22). The Appeals Council affirmed the ALJ's decision in the Second Application. The Court will therefore review the ALJ's decision, which stands as the Commissioner's final decision (Tr. 21).

## STANDARD OF JUDICIAL REVIEW

Section 42, U.S.C. § 405(g) provides for judicial review of a the Commissioner's "final decision" under Title II. The standard for judicial review for federal district courts is whether the substantial evidence supports the decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Howard v. Apfel*, 17 F. Supp. 2d 955, 965 (W.D. Mo. 1998) (citing *Richardson v. Perales*,

402 U.S. 389, 401 (1971); *Johnson v. Chater*, 108 F.3d 178, 179 (8th Cir. 1997); *Andler v. Chater*, 100 F.3d 1389, 1392 (8th Cir. 1996)). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008). If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits. *Id.* (quotations and citations omitted). Thus, the Court will uphold the Commissioner's final decision "if it is supported by substantial evidence on the record as a whole." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

## LAW & ANALYSIS

Brown asserts the following errors in his Second Application: the weight the ALJ granted evidence, Brown's credibility, and Brown's RFC.

**Weight of the Evidence**

Three kinds of medical evidence are in question in Brown's Second Application: evidence from the First Application (Tr. 344-59), Missouri Department of Family Support Evaluation (Tr. 298, 299-300, 364-66), and VA records (367-98). For reasons set forth above, the ALJ was correct when he asserted res judicata and did not re-weigh the evidence from the First

-13-

Application.  *See supra* SECTION I.  The ALJ also granted little weight to the other two forms of evidence.

Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).  "The ALJ need not consider medical records created after the date last insured unless they relate to [claimant]'s condition before the date last insured."  *Bannister v. Astrue*, 730 F. Supp. 2d 946 (S.D. Iowa 2010).

The ALJ correctly afforded little weight to the Missouri Family Support evidence.  First, this evidence includes a copy of an undated card from the Missouri Department of Social Services.[6]  Tr. 298.  The card states "possession of this card does not certify eligibility or guarantee benefits."  Tr. 298.  On its face, this card does not prove that Brown was eligible for benefits at any time.

Second, transcript pages 364-366 illustrate that Missouri Family Support denied Brown benefits on August 20, 2009. Tr. 364-66.  Finally, transcript pages 299-300 contain a notice that Brown's benefits from Missouri Family Support would end

---

[6] Brown admits this card was issued outside the relevant time. Filing No. 36, at 13.

effective August 23, 2011. Tr. 299-300. This letter does not pertain to any period prior to Brown's DLI, does not prove that Brown ever received benefits relevant to his alleged disability, and does not show that the department reversed its earlier decision.

The ALJ correctly afforded little weight to the VA records. Although a disability rating by the VA is not binding on the ALJ, it is "entitled to some weight and must be considered in the ALJ's decision." *See Hamel v. Astrue*, 620 F. Supp. 2d 1002, 1025 (D. Neb. 2009). "If the ALJ rejects the VA's finding disability, reasons should be given to enable a reasoned review by the courts." *Id.* Here, the ALJ rejected the VA decision because medical evidence did not address the period in question. Tr. 20-21.

First, the ALJ rejected the medical evidence from 1982 and 1986 because Brown was gainfully employed for many years following those examinations. Tr. 20. Second, the later VA examinations occurred after Brown's DLI. The first examination was in March 2010; this examination was not indicative of disability in and of itself. *Id.* Then, Brown underwent a series of examinations from April - June 2011. *Id.* Because the VA records were outside the relevant period of purported disability,

the ALJ did not err in affording it little weight.  See *Bannister*, 730 F. Supp. 2d at 954-55.

**Brown's Credibility**

The ALJ found that Brown's subjective complaints of limitations and pain level precluding all types of work not fully credible because of inconsistences with the objective medical evidence, the lapse of Brown's medical treatment, and the lack of medical opinions and other medical evidence.  Tr. 17, 19. "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the *Polaski* standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible."  *Brown I*, 4:08cv483, 2009 WL 88049, at *8 (quoting *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004)). The ALJ must "specifically demonstrate in his decision that he considered all of the evidence."  *Id.* (citing *Masterson*, 363 F.3d at 738; *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). "The determination of a claimant's credibility is for the Commissioner, and not the Court, to make."  *Id.* (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Pearsall*, 274 F.3d at 1218).  The Second Application's ALJ made an express

determination of Brown's credibility and highlighted numerous inconsistencies between the record and Brown's impairments.

A claimant's allegations may be discredited by evidence that the claimant has received minimal treatment when compared to the symptoms he alleges. *See Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (upholding credibility determination in light of "absence of hospitalizations . . . , limited treatment of symptoms, [and] failure to diligently seek medical care"); *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) (stating that allegations of disabling pain are discredited by "evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications."); *see also Brown I*, 4:08CV483, 2009 WL 88049, at *9. Brown did not seek medical attention or take medication for a period of four years, which encompassed the relevant period. Filing No. 43, at 8-9 (citing Tr. 15, 19, 393). The evidence shows that Brown did not participate in sleep apnea treatment, had only mild muscular and skeletal abnormalities, exhibited no symptoms of fatigue or cardiovascular distress, and lacked a prescription for his cane. Tr. 18-19. The ALJ also mentioned that Brown declined to undergo weight loss and physical therapy and that his range of motion was only mildly limited. Tr. 19. The ALJ considered all the evidence in the record and that evidence was inconsistent with

Brown's subjective complaints; the ALJ correctly found Brown's allegations of limitation and pain level were not fully credible.

**Brown's RFC**

Brown argues that, without Boone's assessment, the First and Second Applications lacked sufficient medical opinion evidence to establish his RFC.  Filing No. 1, at 9; Filing No. 36, at 5.  SSA argues that the ALJ had sufficient evidence to establish Brown's RFC, and to the extent that the ALJ lacked such evidence, Brown was the cause of the deficiency.  Tr. 41 (Brown "failed his burden of establishing a more restrictive residual functional capacity [than light work]."), Tr. 21 ("[t]here are no medical opinions in the instant case from State agency medical consultants, though the Court affords the general benefit of the doubt in finding that the claimant would be limited to light work, considering the findings established in the previous hearing decision. . . .").

Residual functional capacity represents the most that a claimant can still do despite his physical or mental limitations.  20 C.F.R. § 404.1545(a).  "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments and determine the claimant's RFC."  *Baldwin*, 349 F.3d at 556 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)).  "It

is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Id.* "The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Id.* (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

The medical evidence of Brown's impairments in the Second Application is sparse. Brown failed to seek medical attention for a period of four years. Brown refused to attend a medical examination ordered by the ALJ.[7] Brown failed to appear at the hearing on his Second Application. Nonetheless, medical evidence other than opinion evidence does exist, including examinations of Brown by Drs. Carson, Boodram, Abbas, and Vasireddy. Tr. 18, 19, 342, 345-51, 369, 390, 396. "[T]he claimant's failure to provide medical evidence with this information should not be held against the ALJ when there *is* medical evidence that supports the ALJ's decision." *Steed v. Astrud*, 524 F.3d 872, 876 (8th Cir. 2008) (citing *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005). Therefore, the ALJ

---

[7] The refusal to attend a consultive examination without good cause is grounds alone to find a claimant is not disabled. 20 C.F.R. § 404.1518(a); *Brown I*, 4:08cv483, 2009 WL 88049, at *15.

did not err in assigning Brown's RFC as "light work;" the substantial weight of the record supports the ALJ's RFC.

## CONCLUSION

There was neither a constructive reopening or Due Process violation in Brown's First Application and, therefore, the doctrine of res judicata forecloses this Court's review of Brown's First Application. There was no violation of Brown's constitutional rights. The substantial evidence of the Second Application supports the ALJ's determinations. The Court will affirm the denial of benefits and will deny all pending motions. A separate order will be entered in accordance with this memorandum opinion.

DATED this 16th day of January, 2014.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court